SANGER BROTHERS v. BURKE BROTHERS ET AL.

Decided January 26, 1898.

1. **Insolvent Debtor—Fraudulent Conveyance.**

A conveyance of his property by an insolvent debtor to a trustee, to be converted into money, out of which his debts to three preferred creditors were to be paid, after which the trustee "shall next apply the remaining portion of such moneys to such of our debts as may be established against us, or shall hold the same subject to our order or the claim of any creditor not hereby preferred, paying each creditor not hereby preferred a pro rata amount of the money that may remain," was void as against creditors, whether regarded as an assignment or a deed of trust, having the effect to unreasonably hinder and delay them in their right to subject the property to their claims.

2. **Same.**

Such conveyance makes no definite and specific disposition of the surplus, but vests in the trustee a discretion which might enable him to unreasonably hinder and delay, if not absolutely defeat, the efforts of other creditors to subject the surplus to their claims.

3. **Same.**

The language, "such of our debts as may be established against us," is ambiguous, and does not sufficiently point out a mode by which creditors could reach this surplus.

APPEAL from Bell. Tried below before Hon. John M. Furman.

*Boynton & Boynton*, for appellants.

*Harris & Saunders*, for appellees, filed no brief, but submitted a motion for rehearing and to dismiss appeal, which motion was overruled.

KEY, ASSOCIATE JUSTICE.—Sanger Bros. brought suit in the County Court of McLennan County against Burke Bros. on a debt, and obtained an attachment to Bell County. This attachment was levied on certain merchandise. J. A. Harrell made affidavit and gave bond, claiming the property. Issues were made up, and a trial had before the court on January 16, 1897, resulting in a judgment in favor of the claimant. Appellants excepted and gave notice of appeal.

The case is brought up on the court's findings, without a statement of facts. The findings of the court are as follows:

"Findings of Fact.—1. On the 29th day of December, 1894, and prior thereto, Burke Bros., a firm composed of J. J. Burke and A. L. Burke, were indebted to Sanger Bros. in the sum of $327.16.

"2. That on said date, Burke Bros. and the members of said firm were in business in Holland, Bell County, Texas, and on said date they executed the following instrument:

"*The State of Texas, Bell County.*—Know all men by these presents that we, J. J. Burke and A. L. Burke, of Holland, Bell County, Texas, composing the firm of Burke Bros., merchants doing business as such in said town of Holland, being indebted to the persons hereinafter named in the sums hereinafter mentioned, and to other persons not specially herein named, and being desirous of providing for the prompt payment of our said indebtedness in the order hereinafter mentioned, have bargained, sold, and delivered, and by these presents do bargain, sell, convey, and deliver to J. A. Harrell, of Bell County, Texas, our entire stock of goods, wares, and merchandise now owned by us and in our possession in our storehouse in Holland, Bell County, Texas, and all office furniture, show cases, scales and fixtures, shelving and counters belonging to us in said storehouse; to have and to hold the same unto the said Harrell for the following uses, purposes, and trusts, absolutely, forever, viz: The said Harrell shall, as soon as practicable after the execution of this instrument, take possession of and sell for cash, either at public or private sale, all of the goods, wares, and merchandise, and other property hereby conveyed, keeping said property, wares, and merchandise insured until disposed of, and shall apply the moneys arising from such sale as follows, viz: He shall first pay off in full our indebtedness due by us by open account to Harris & Saunders, of Belton, Texas, in the sum of one hundred dollars; and after the payment of said sum of one hundred dollars to Harris & Saunders, he, the said Harrell, shall next pay to Reed Bros., bankers, of Holland, Texas, our indebtedness to them in full, which indebtedness consists in note and overdrafts amounting to three hundred and fifty ($350) dollars; and after the payment of said sum of three hundred and fifty dollars in full to said Reed Bros., the said Harrell shall next pay our indebtedness in full to J. A. Melvin, of Bell County, Texas, consisting of our note to him for four hundred and fifty dollars and about one year's interest thereon at ten per cent; and after the payment of said three sums above mentioned, in the order named, said Harrell shall next apply the remaining portion of said moneys to such of our debts as may

be established against us, or shall hold the same subject to our order, or the claim of any creditor not hereby preferred, paying each creditor not hereby preferred a pro rata amount of the money that may remain in the hands of said Harrell after the three creditors first herein named are paid in full, and it is hereby expressly provided that said trustee Harrell shall be and is hereby allowed fifty dollars per month for his services in selling said property and paying out the money, as herein provided, said monthly compensation to extend not over two months; but if he shall sell said stock in bulk at an earlier day than two months hence, his compensation shall, instead of fifty dollars per month, be ten per cent of the money he received. In case there is any of said money remaining after paying the debts and compensation herein provided for, said Harrell shall pay the same over to us, it being hereby understood that all necessary expenses and the compensation for said Harrell shall be retained in his hands, as the same are incurred and is earned by him.

"Witness our hands, this the 29th day of December, A. D. 1894.

"J. J. BURKE,
"A. L. BURKE.

"The instrument was duly acknowledged and filed for record in Bell County on the day of its execution.

"3. That at the time of the making of the said deed of trust, Burke Bros. and the members of said firm were in an insolvent condition.

"4. That said J. A. Harrell, claimant, immediately accepted under said deed of trust, and the creditors Harris & Saunders and Reed Bros. mentioned therein at once notified said trustee of their acceptance under said instrument.

"5. That about 11 o'clock p. m. on the night of December 29, 1894, said trustee took actual possession of the property described in said deed of trust, but at about the hour of 7:50 o'clock p. m. on said 29th day of December, 1894, said Burke Bros. delivered to said Harrell said deed of trust, which was then filed for record, and at the same time delivered to said Harrell the key to the storehouse, where the goods conveyed by the deed of trust were then stored.

"6. That a day or two prior to the executing of said deed of trust, J. A. Melvin, the third creditor mentioned in said deed of trust, saw J. J. Burke, and called on them for payment of the debt due him, mentioned in said deed of trust; that J. J. Burke then told Melvin that he could not pay him the money, but he was trying to make the sale of said stock of goods, and that, if he did so, he would protect Melvin; to this Melvin replied, telling him to make the sale if he could, but that if he had to make an assignment or deed of trust, to protect him, and Mr. Burke then told Melvin that he would do so.

"7. That on the 29th day of December, 1894, Sanger Bros. brought suit on their said claim against Burke Bros., which suit was reduced to judgment on the date stated in plaintiff's tender of issues, and plaintiffs also recovered judgment for the costs of said suit, in the sum of $21.30, and that this debt existed prior to the making of said deed of trust.

"8. That at the time of filing said suit, Sanger Bros. obtained an attachment against said Burke Bros., and at 1:30 o'clock a. m. December 30, 1894, the officer having said writ of attachment went to the storehouse of Burke Bros., containing the goods mentioned in said deed of trust and nailed a board across the key hole of the front door and back door of said house, and on each of said boards posted a notice, that he had attached the property contained in said building, by virtue of said writ of attachment.

"9. That on the morning of December 30th, at some time prior to 11 o'clock, said officer saw Burke Bros. and said Harrell and demanded the keys to said storehouse, and notified them of said attachment; that they refused to give him possession or let him enter said store; and about 11 o'clock a. m. on said day, said officer went to said storehouse, which was in the condition he left it in on the night before, and forced an entrance into the same, and plaintiffs designated the portion of the stock attached, which was inventoried in the officer's return to said writ of attachment.

"10. That in said judgment—Sanger Bros. v. Burke Bros.—Sanger Bros. obtained a foreclosure to their lien on said property attached, subject to the disposition of this case.

"11. That early on the morning of December 30, 1894, said A. L. Burke left Holland to notify said Melvin of the execution of said instrument; that he saw said Melvin about 10 o'clock a. m. of said day and told him that Burke Bros. had made a deed of trust, conveying their stock of goods to J. A. Harrell, and that Reed Bros. and himself (Melvin) had been preferred; to this Melvin replied that that was all right.

"12. The goods conveyed by said deed of trust were of the reasonable value $1150, and the portion of said goods so attached of the reasonable value of $600.

"13. That the trustee has now in his hands, realized from said goods, $1011.

"14. I find that at the time of the execution of said deed of trust or chattel mortgage by Burke Bros. they were owing Reed Bros., Harris & Saunders, and J. A. Melvin the amounts severally as mentioned in said deed of trust; and said debts are still due and unpaid, and were and are bona fide debts against said Burke Bros."

*Opinion.*—We do not consider it necessary to determine whether the instrument executed by J. J. and A. L. Burke is a chattel mortgage or an assignment, because, whether it be the one or the other, in our opinion, the terms of the instrument, in connection with the fact that the makers were insolvent, and that the property was worth more and sold for more than the three secured debts, render it void, as against creditors. The stipulations therein, "and after the payment of said three sums of money above mentioned in the order named, said Harrell shall next apply the remaining portion of said moneys to such other of our debts as may be established against us, or shall hold the same subject to

our order or the claim of any creditor not hereby preferred, paying each creditor not hereby preferred a pro rata amount of the money that may remain in the hands of said Harrell after the three creditors first herein named are paid in full," are fatal to the validity of this instrument.

The effect of these stipulations might be to unreasonably hinder and delay creditors who have a right to have the surplus, after payment of the three secured debts, applied to their demands.

If the instrument had merely stated that the surplus should revert to the grantors, or had been silent in reference to the disposition to be made of it, then, as such surplus might have been reached by levying an attachment upon the property, as prescribed by article 2349 of the Revised Statutes, or by garnishment proceeding against the trustee, the case would have been different, though we make no ruling as to the validity of such an instrument. The vice in this conveyance is, that it makes no definite and specific disposition of the surplus, but leaves it to the discretion of the trustee, either to pay it to the makers of the instrument, or to all their other creditors in proportion to their several debts, or apply it to the payment of such debts, as may be established against the makers.

These provisions vest in the trustee a discretion, the exercise of which might enable him to unreasonably hinder and delay, if not absolutely defeat, the efforts of other creditors to subject the surplus to their debts. For instance, if a creditor should attempt to reach this surplus by attachment or garnishment, the trustee could say, that according to the terms of the conveyance, Burke Bros. had no absolute right to the surplus, because he had elected not to hold it subject to their order, or pay it to them, but to dispose of it in one of the other modes prescribed by the instrument. Or if the creditor should demand payment of his pro rata part of the surplus, under the last clause of the instrument, as quoted above, the trustee might reply that he had decided not to apply the surplus as authorized by said clause, but to hold it subject to the order of Burke Bros., or pay it out on such debts as might be established against them; and if the creditor sought to reach this money in the mode designated in the first clause, as above quoted, even if the phrase "established against us" has a definite and certain meaning, still, after establishing his claim, the creditor might be met with the assertion that the trustee had concluded to ignore the established claims, and pay the money to Burke Bros. This illustrates the want of certainty, as to the disposition to be made of the surplus, after paying the three preferred debts.

Furthermore, the language, "such of our debts as may be established against us," is ambiguous, and does not sufficiently point out a mode by which creditors could reach this surplus. It does not show whether the debts are to be established by the production of written obligations to pay, by ex parte affidavits, or by judgments; nor does it state whether the money is to be applied to the first debts that are established, or to

be pro rated among all the debts that may be established within a given time.

For these reasons, under the facts in this case, as against the rights of appellants, the instrument in question is void, and did not vest title in the trustee.

The judgment of the trial court will be reversed and judgment here rendered for appellants.

*Reversed and rendered.*

Writ of error refused.